LAURA S. TAYLOR AND OTHERS, EXECUTORS, ETC., OF
JAMES B. TAYLOR, DECEASED, PLAINTIFFS, v. THE
MAYOR, ALDERMEN AND COMMONALTY OF THE
CITY OF NEW YORK, DEFENDANT.

*Set-off — when one arising out of the fraud of the assignor may be interposed as
against the assignee — Effect of chapter 304 of 1874 — Presenting claim to the
comptroller, before suit.*

Between April 25, 1870, and December 12, 1871, the Transcript Association,
under proper employment, did printing for the county of New York, reason-
ably worth the sum of $30,956.85, and, under like employment, between May
1, 1871, and January 1, 1872, did printing for the city of New York which was
reasonably worth the sum of $13,605.40. The claims were assigned to the
plaintiffs in January, 1872.

In this action, brought against the city of New York to recover the said amounts,
the city interposed a set-off, founded on the fact that in the year 1869, and in
January, 1870, the said association received from the city sums amounting in
the aggregate to $117,419.99 for arrearages for advertising for the city govern-
ment, and for a claim for advertising for the common council, as adjusted by
the comptroller under chapter 853 of 1868, and that in said amount there was
a gross overcharge which had been fraudulently presented, passed upon and
obtained.

*Held,* that the set-off was a proper one, and that the defendant was entitled to
interpose it as against the plaintiffs claiming as assignees of the said association.

That chapter 304 of 1874, imposing upon the city of New York the payment of
county charges, transferred to the city all existing equities, set-offs and defenses
that could be interposed to such charges either by the city or county at the
time it was passed.

The failure to present a claim to the comptroller of New York city before suit
thereon affects the remedy only ; such presentation does not in any way deter-
mine the existence of, or create the debt.

EXCEPTIONS ordered to be heard in the first instance at General
Term, after a verdict in favor of the defendant directed at the
circuit.

*C. D. Adams,* for the plaintiffs.

*F. Lynde Stetson,* for the defendant.

BRADY, J. :

By a stipulation it was conceded that the Transcript Association,
under proper employment, did printing for the county of New
York, reasonably worth the sum of $30,956.85, between April 25,

1870, and December 12, 1871; and further, that the association, under like employment, did printing for the city of New York, reasonably worth the sum of $13,605.40, between the 1st of May, 1871, and the 1st of January, 1872.

The city, in response to this claim, interposed a set-off founded upon these facts, namely : That in the year 1869, and in January, 1870, the association received from the city sums aggregating $117,419.99 for arrearages for advertising for the city government, and for a claim for advertising for the common council, as adjusted by the comptroller, under the Law of 1868, chapter 853, and in which amount there was a gross overcharge fraudulently designed, fraudulently presented, fraudulently passed upon and fraudulently obtained. It does not seem to be seriously contested, if contested at all as a matter of fact, that the overcharges mentioned were made, and that, as against the association itself, the claim which the set-off represents would be recoverable.

The plaintiff's contention is that, holding by assignment from the Transcript Association, their right to the claim is free from any set-off or right of set-off in the defendants ; that no such impediment attached at the time the assignment was made, and this position is assumed on the concession, for the sake of the argument, that the frauds. complained of were perpetrated. It appears that at the time the printing was done, to recover for which this suit was instituted, these overcharges had been paid, and therefore it would seem if there was any claim existing against the association arising out of them, it was due at the time the assigned claim arose.

There can be no doubt that an action for money had and received could have been maintained on the facts stated against the association, and it is difficult to understand, therefore, why the claim which could thus be prosecuted and in the manner stated is not a good set-off to the demands interposed.

The assignment to the plaintiff was taken subject to existing equities and obligations on the part of the assignor, the association, and therefore taken with all the burthens springing out of either of these elements.

The Code of Procedure (§ 112) provides that, in the case of an assignment of a thing in action, the action of the assignee

shall be without prejudice to any set-off or other defence existing at the time of or before notice of the assignment. And the provisions of the Revised Statutes (vol. 2, p. 354) do not contain anything which inhibits the use of the defendant's claim as a set-off, because it is founded upon an implied contract ; it is due to the defendants as the original payees ; it is capable of being ascertained by a simple calculation, and had not ceased to exist or to belong to the defendants at the time of the beginning of this action. The fifth subdivision of section 18 of the Revised Statutes, declaring that the set-off can be allowed only in actions founded upon demands which could themselves be the subject of set-off according to law, does not interfere with the right of set-off on behalf of the defendants, because this is an action upon a demand which could be set-off by the association if an action were brought against it to recover the amount alleged to be due. Of course, the extent of the set-off must in this case be limited to the amount of the assigned demand. (*Martin* v. *Kunzmuller*, 37 N. Y., 397.)

The plaintiffs, under the second point in the brief submitted, have presented what seems to be the chief theory upon which they rely. They say that their claim by assignment from the Transcript Association is free and clear of any set-off or right of set-off, and that no such right had attached when the assignment was made, because in January, 1872, when the assignment was made, no suit could have been maintained by the association or by either the city and county, and that if the city and county each sued the association on the claims urged as sets-off in this action for money had and received, the association could not have set-off its respective claims in these suits.

I must admit that I do not clearly understand what is meant by these several propositions. I think that the proposition in reference to the right to maintain an action by the association against the city and county rests on the fact that the claim had not at that time been presented to the city. But why the city and county could not at that time have sued the association on the claims urged as set-offs in this action I do not understand. It may be that the plaintiffs mean by this statement that in January, 1872, when the assignments were made, no suit could have

been maintained by the association either against the city or county, because no demand had been made. But its claim was a county charge, or in part a county charge only, and there did not exist at that time the statute which was passed in 1874 (chapter 304) consolidating the governments of the city and charging upon the city the debts of the county.

If any claim had been presented to the board of supervisors against the county it would have been the right of that body in adjusting it to take into consideration the overcharge which had been paid, and to have protected the county in that way. If any part of the claim had been urged against the city the same right would have existed. The act of consolidation under which this action was brought, in imposing upon the city the payment of county charges, did not deprive the county of any defence or objection to any claim made which might be interposed, and the Legislature must be presumed to have intended, when the charge was imposed, to have transferred to the city all existing equities and set-offs, and to have preserved to the city and county any and all existing defences. The result of these consideration maintains, therefore, the original proposition made in this opinion, namely : that the assignment to the plaintiffs by the Transcript Association was subject to all existing equities and defences or objections that could be interposed either by the city or county at the time it was made.

The class of cases referred to by the counsel for the appellant, comprising *Martin* v. *Kunzmuller* (*supra*), *Myers* v. *Davis* (22 N. Y., 489), *Patterson* v. *Patterson* (59 id., 574), have no application to this case, for the reason that they relate to set-offs which were not in existence at the time the assignments were made, or are illustrative of the rules governing such facts ; while in this case, if any set-off existed, it was *in esse* at the time the assignment was made. The claims were mutual because the obligation to present a demand to the comptroller under the statute referred to affects the remedy only and not the creation of the debt. The object to be obtained by that procedure was to prevent the commencement of actions against the city without affording a reasonable time after a demand made for their payment to provide for them.

The plaintiffs also urged, as a reason why they should not be prejudiced by the overcharges, that the moneys received were paid to Mr. Wilbur personally, and that the association was not chargeable for his mis-deeds. But the evidence shows that he was acting as the president of the association, and that as such he verified the accuracy of the vouchers, and as such he received the money. These facts destroy the assumption of the mere personal or private capacity of Mr. Wilbur, and throw upon the association all the obligations arising from the receipt of the moneys paid under the frauds committed upon the city. It may be justly said that he knew of these overcharges, and that the officers of the association conducting its affairs also knew of them.

If, however, by the strict rules of law the plaintiffs, as the assignees of the demand in suit, are not to be injured by the use of the claims against the association, then the doctrine of equity should be invoked, and the fraudulent acts on the part of the association, amounting to a sum equal to the claim assigned, should be allowed as a defence to this action, either as an equitable set-off or otherwise. It would seem to be an outrage, under all the circumstances disclosed in this case, that the city of New York should be compelled to pay the amount of the plaintiffs' claim. Before taking the assignment, it was the duty of the assignee to have made the necessary inquiries to ascertain whether the claim was justly due, if he wished to avoid the legal consequences which have been declared in the court below and are sustained by this opinion.

The judgment rendered for the defendant must be affirmed.

Davis, P. J., and Ingalls, J., concurred.

Judgment affirmed.